IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DARRELL L. JACKSON, JR., | ) | CASE NO. 1:18CV00986 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE JACK ZOUHARY |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| BRIGHAM SLOAN, | ) | JONATHAN D. GREENBERG |
| Warden | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2. Before the Court is the Petition of Darrell L. Jackson ("Jackson" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Jackson is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Jackson*, Lorain County Court of Common Pleas Case No. 14-CR-090543. For the following reasons, the undersigned recommends that the Petition be DISMISSED.

**I. Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d

439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011). The state appellate court summarized the facts underlying Jackson's conviction as follows:

> {¶ 2} Following an investigation into drug trafficking, the Lorain Police Department executed a search warrant at Jackson's home. During the search, officers discovered a firearm, multiple cell phones, United States currency, a scale, a hydraulic press, Pyrex jars with residue, a grinder with residue, crack cocaine, and a large amount of white powder in different baggies, some of which field tested positive for cocaine. Consequently, Jackson was indicted by the Lorain County Grand Jury and charged with several counts of trafficking and possession of cocaine with specifications, tampering with evidence, having weapons while under disability, possession of criminal of tools, and drug paraphernalia. At arraignment, Jackson pleaded not guilty to the charges.
>
> {¶ 3} The Lorain Police Department then submitted the white powder to a forensic analyst to test for licit and illicit substances. The forensic analyst testified that her analysis found three different specimens that tested positive for Benzocaine and caffeine, but no controlled substances, one specimen weighing .38 grams that tested positive for cocaine and Levamisole, and one specimen weighing 38.2 grams that tested positive for cocaine and Levamisole. Her analysis also found that out of five baggies with a total combined weight of 137.89 grams, four tested positive for cocaine and Levamisole. The fifth baggie was not tested due to the lab's policy of using hypergeometric distribution, which calls for the lab to test a statistical amount to give them a ninety-five percent confidence that all of the samples will have the same contents.
>
> {¶ 4} Subsequently, Jackson pleaded guilty to several counts in the indictment, waived his right to a jury trial, and proceeded to a bench trial on counts three and four of the indictment. Count Three charged Jackson with trafficking in cocaine in violation of R.C. 2925.03(A)(2), a felony of the first degree. The offense carried a major drug offender specification and a forfeiture of property specification ($2,978.00 in cash). Count Four charged Jackson with possession of cocaine in violation of R.C. 2925.11(A), a felony of the first degree. The offense carried a major drug offender specification. At the conclusion of the State's case-in-chief, Jackson raised a Crim.R. 29 motion for judgment of acquittal, arguing that R.C. 2925.03(C)(4) and R.C. 2925.11(C)(4) required the State to prove the weight of the pure cocaine involved in order to convict him of anything above a fifth degree felony. The trial court summarily denied the motion. The defense then rested and renewed its Crim.R. 29 motion. The trial court subsequently found Jackson guilty of both counts and sentenced him on all counts in the indictment to an aggregate term of eleven years in prison.

*State v. Jackson*, No. 15CA010828, 2016 WL 6599423, at *1 (Ohio App. 9th Dist. Nov. 7, 2016).[1]

## II.  Procedural History

### A.  Trial Court Proceedings

In October 2014, the Lorain County Grand Jury indicted Jackson on the following charges: five counts of trafficking in drugs in violation of Ohio Rev. Code §2925.03(A)(1) (Counts One, Two, Three, Five, and Six); one count of possession of drugs in violation of Ohio Rev. Code §2925.11(A) (Count Four); one count of tampering with evidence in violation of Ohio Rev. Code §2921.12(A)(1) (Count Seven); one count of having weapons while under a disability in violation of Ohio Rev. Code §2923.13(A)(3) (Count Eight); one count of possessing criminal tools in violation of Ohio Rev. Code §2923.24(A) (Count Nine); and one count of drug paraphernalia offenses in violation of Ohio Rev. Code §2925.14(C)(1) (Count Ten).  (Doc. No. 8-1, Exh. 1.)  Jackson initially entered pleas of not guilty to all charges.  (Doc. No. 8-1, Exh. 2.)

On January 21, 2015, the State filed a Notice of Intent to submit a laboratory report as evidence at trial.  (Doc. No. 8-1, Exh. 3.)  On May 12, 2015, Jackson, through counsel, filed a Motion to Permit Independent Drug Testing, requesting the state trial court allow for an "independent test performed on the drugs involved."  (Doc. No. 8-1, Exh. 4.)  The trial court granted this Motion on May 20, 2015.  (Doc. No. 8-1, Exh. 5.)

---

[1] The Court notes that *Jackson* was overruled by *State v. Hamilton*, No. 15CA010830, 2017 WL 277485 (Ohio App. 9th Dist. Jan. 23, 2017), on the state statutory interpretation question. *Hamilton*, 2017 WL 277485, at *5 ("Accordingly, to substantiate an enhanced penalty for convictions for possession and trafficking in cocaine pursuant to R.C. 2925.11(C)(4) and R.C. 2925.03(C)(4), the State must prove the weight of the actual cocaine, excluding any filler or cutting agents, involved in the offenses.").  The Ohio Supreme Court vacated and remanded the state appellate court's decision in *Hamilton*.  150 Ohio St.3d 1451, 2017 -Ohio- 8136, 83 N.E.3d 937 (Table).

On June 1, 2015, Jackson, through the assistance of counsel, withdrew his not guilty plea and entered guilty pleas as to Counts One, Two, Five, Six, Seven, Eight, Nine, and Ten. (Doc. No. 8-1, Exh. 6.) Counts Three and Four remained pending. (*Id*.)

On June 1, 2015, Jackson waived his right to jury trial as to Counts Three and Four and the case proceeded to a bench trial that same date. (Doc. No. 8-1, Exh. 8, 9.) On June 5, 2015, the State submitted supplemental authority to the state trial court, in support of its argument it "has never been required to prove the purity of cocaine, or any other drug." (Doc. No. 8-1, Exh. 10.) Jackson, through counsel, also filed a post-trial brief, arguing the opposite. (Doc. No. 8-1, Exh. 11, 12.)

On June 24, 2015, the state trial court returned its verdict, finding Jackson guilty of all remaining charges. (Doc. No. 8-1, Exh. 13; Doc. No. 8-2, Tr. 131.) The state trial court immediately proceeded to sentencing after returning its verdict. (Doc. No. 8-1, Tr. 132.) The trial court merged Counts Three and Four and sentenced Jackson to six years in prison on Count One, six years on Count Two, eleven years on Count Three, six years on Count Five, six years on Count Six, two years on Count Seven, two years on Count Eight, 10 months on Count Nine, and one month on Count Ten. (*Id*. at Tr. 132-133.) The trial court ordered these sentences to be served concurrently, for an aggregate sentence of eleven years. (*Id*. at Tr. 133.) The trial court also ordered Jackson forfeit $2,978 to the State of Ohio. (Doc. No. 8-1, Exh. 15.)

**B.    Direct Appeal**

Jackson, through counsel, filed a timely notice of appeal to the Ohio Ninth District Court of Appeals, Lorain County. (Doc. No. 8-1, Exh. 16.) In his appellate brief, he raised the following assignments of error:

    I.    The trial court erred in convicting Jackson based on insufficient evidence.

    II.      The trial court's entry of conviction was against the manifest weight of the evidence.

(Doc. No. 8-1, Exh. 17) (capitalization altered.)  The State filed a brief in response.  (Doc. No. 8-1, Exh. 18.)

On November 7, 2016, the state appellate court affirmed Jackson's convictions and prison sentences.  (Doc. No. 8-1, Exh. 19.)  *See also State v. Jackson*, No. 15CA010828, 2016 WL 6599423 (Ohio App. 9th Dist. Nov. 7, 2016).

On December 21, 2016, Jackson, through counsel, filed a Notice of Appeal with the Supreme Court of Ohio.  (Doc. No. 8-1, Exh. 20.)  Within his Memorandum in Support of Jurisdiction, Jackson raised the following Proposition of Law:

    I.      In prosecuting cocaine offenses involving mixed substances under R.C. 2925.11(C)(4)(a) through (f), the State must prove that the weight of the cocaine meets the statutory threshold, excluding the weight of any filler materials used in the mixture.

(Doc. No. 8-1, Exh. 21.)  The State filed a Memorandum in Response.  (Doc. No. 8-1, Exh. 22.)

On July 26, 2017, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac.R. 7.08(B)(4).  (Doc. No. 8-1, Exh. 23.)

**C.**    **Post-Conviction Filings**

On June 11, 2018, Jackson filed a *pro se* "Petition to Vacate or Set Aside Judgment of Conviction or Sentence" with the state trial court.  (Doc. No. 8-1, Exh. 24.)  Within this Petition, Jackson claimed he was deprived of the effective assistance of counsel at the trial level because his attorney "failed to fulfill his adversarial duty to the State's case during both the plea negotiation process and preparation for trial and trial stages."  (*Id.*)  The State did not file a response.

On June 25, 2018, the state trial court denied Jackson's Petition as untimely.  (Doc. No. 8-1,

Exh. 25.) On July 17, 2018, Jackson filed a Notice of Appeal. (Lorain County Case No. 18CA011363, Docket Entry dated July 17, 2018). On March 29, 2019, the state appellate court affirmed the trial court's denial of Jackson's petition as untimely. *State v. Jackson*, No. 18CA011363, 2019 WL 1430586 (Ohio App. 9th Dist. Mar. 29, 2019). On June 26, 2019, the Ohio Supreme Court declined to accept the appeal for review. *State v. Jackson*, 156 Ohio St.3d 1447, 2019 -Ohio- 2498, 125 N.E.3d 923 (Table).

**D.     Federal Habeas Petition**

On April 26, 2018,[2] Jackson filed a Petition for Writ of Habeas Corpus and asserted the following ground for relief:

> **Ground One:** There was insufficient evidence to prosecute the appellant of the cocaine, as the state must prove that the weight of the cocaine meets the statutory threshold, excluding the weight of any filler materials used in the mixture.

(Doc. No. 1 at 5.)

On July 12, 2018, Warden Brigham Sloan ("Respondent") filed his Return of Writ. (Doc. No. 8.) On August 10, 2018, Jackson filed his Traverse. (Doc. No. 10.)

Jackson also filed a "Motion for a Stay in Abeyance" on August 10, 2018. (Doc. No. 9.) Within this Motion, Jackson argued a stay of these proceedings was required, as the state appellate court had not yet ruled on his post-conviction filing. (*Id*.) Respondent filed a brief in opposition on August 13, 2018 and a sur-reply to Jackson's Traverse on August 14, 2018. (Doc. Nos. 11, 12.)

---

[2] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988). While the Petition herein did not arrive at the Court for filing until April 30, 2018, Jackson states he placed it in the prison mailing system on April 26, 2018. (Doc No. 1 at 14.) Thus, the Court will consider the Petition as filed on April 26, 2018.

On September 6, 2018, Jackson filed a "Motion to Amend His Federal Habeas Corpus Petition." (Doc. No. 13.) Attached to this Motion, Jackson included a proposed Amended Habeas Petition, which included the following additional ground for relief:

> Ground Two: Jackson receive[sic] ineffective assistance of counsel as defendant failed to fulfill his adversary duty to the State's case during both the plea negotiation process and preparation for trial.

(Doc. No. 13-1 at 6.) Respondent filed a brief in opposition on September 10, 2018. (Doc. No. 14.)

On September 25, 2018, the undersigned recommended that Jackson's motion for stay and motion to amend be denied. (Doc. No. 15.) Jackson objected to the undersigned's report and recommendation. (Doc. No. 16.) Respondent filed a response to Jackson's objections. (Doc. No. 17.) On January 24, 2019, the Court adopted the undersigned's report and recommendation over Jackson's objections. (Doc. No. 18.) The Court's Order certified that an appeal from its decision could not be taken in good faith and that there was no basis upon which to issue a certificate of appealability. (*Id.*) The Court stated that this case remained referred to the undersigned for a report and recommendation on whether to grant or deny Jackson's petition. (*Id.*)

### III.  Procedural Default

**A.     Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),( c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[3] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28,

---

[3] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides: (1) whether the petitioner failed to comply with an applicable state procedural rule; (2) whether the state courts actually enforced the state procedural sanction; (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review; and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

(1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. The exhaustion requirement of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional

law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See also Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 497 Fed. App'x 473, 480 (6th Cir. Aug. 29, 2012).

**B.     Application to Petitioner**

Respondent argues Jackson's claim is procedurally defaulted because he failed to properly exhaust and fairly present his ground as a federal constitutional issue in state court. (Doc. No. 8 at 20.) While Jackson raised a similar claim on direct appeal to the state appellate court and the Ohio Supreme Court, Respondent asserts Jackson failed to: (1) phrase his claims in terms of federal constitutional law regarding sufficiency of the evidence or in terms sufficiently particular to allege denial of a federal constitutional right; (2) rely on federal cases utilizing constitutional analysis regarding sufficiency of the evidence; (3) rely on state cases utilizing federal constitutional analysis regarding sufficiency of the evidence; and (4) allege facts well within the mainstream of pertinent constitutional law. (*Id.*) Respondent maintains these failures stem from the fact that his "state court claims strictly alleged state law violations." (*Id.*)

In the memorandum in support of his Petition, Jackson appears to concede his claim is procedurally defaulted, but that the default should be excused. (Doc. No. 1-1 at 4-5; Doc. No. 10 at 2-4.) Jackson asserts, "Due to the extreme manifest injustice that has occurred in this case, any and all procedural defaults should be overcome to prevent a miscarriage of justice." (Doc. No. 1-1 at 4-5.) In his Traverse, Jackson responds to the Respondent's failure to exhaust and fairly present arguments by stating that either Respondent is "purposely misleading" the Court or that his "efforts to clarify and present his same argument in a better light so that the issue presented could be clear and precise has failed." (Doc. No. 10 at 5-6.) Jackson states, "A review of the record does show that the foundation of his argument is the same supported by the same principles and laws." (*Id.* at 6.) Jackson also maintains that "if the issues submitted herein are not addressed upon its [sic] merits

11

then certainly a manifest injustice will occur which will lead to a miscarriage of justice in this instant case." (Doc. No. 10 at 3.)

The Court finds Jackson's sole ground for relief is procedurally defaulted. Jackson's claims to the state appellate court stemmed from the State's failure "to present any evidence pertaining to the quantity of cocaine beyond its mere presence" and to present "any evidence of the amount of pure cocaine involved in each violation." *State v. Jackson*, 2016 WL 6599423, at *2. In making these claims, Jackson relied exclusively on state cases and state law to interpret state statutes. (Doc. No. 8-1, Exh. 17.) Jackson made only passing mention of the United States Constitution.[4] (*Id.* at 9.) When reaching its decision, the state appellate court based its conclusions entirely on state law. *See State v. Jackson*, 2016 WL 6599423, at **2-7.

Before the Supreme Court of Ohio, Jackson again limited his argument to Ohio law in making his statutory arguments.[5] (Doc. No. 8-1, Exh. 21.) At no point on direct appeal did Jackson frame his claims as federal constitutional issues to the state courts.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). Jackson failed to do

---

[4] In his brief to the state appellate court, Jackson argued: "The State's argument at trial was that <u>Gonzales</u> was not 'binding' on the 9th District. Statutes are. The *constitutions* are. Cases citing outdated, amended law are not." (Doc. No. 8-1, Exh. 17 at 9) (emphasis added).

[5] The Court notes that while Jackson asserted his case was one of "public or great general interest and involves a substantial constitutional issue" (Doc. No. 8-1, Exh. 21 at 1), his brief focused on Ohio statutory interpretation and Ohio law. (*Id.* at 1-7.)

12

so on direct appeal. Therefore, to the extent Jackson is now attempting to assert Ground One as a violation of federal law, it is unexhausted in the state courts.[6] *See Connin v. Miller,* 2014 WL 29125, *5 (N.D. Ohio Jan. 3, 2014). Any return to the state courts with these claims would be futile, as Ohio's doctrine of *res judicata* prevents Jackson "from returning to state court to file a second appeal to assert the same claim under a new legal theory, or to assert a new claim he could and should have raised in his first appeal." *Id.* at 6. Ohio's *res judicata* doctrine is an adequate and independent state ground to procedurally bar claims asserted in federal habeas actions. *See, e.g., Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000).

Accordingly, the Court finds Ground One of Jackson's petition procedurally defaulted.

**1. Cause and prejudice**

The Court further finds Jackson has failed to demonstrate either cause or prejudice sufficient to overcome the procedural default of his claims. In both his memorandum in support of his Petition and his Traverse, Jackson fails to offer any explanation as to why he did not present his ground for relief as a federal constitutional claim in the state courts.

Nor can Jackson claim ineffective assistance of counsel as "cause" to excuse the procedural default of Ground One. In his memorandum in support of his Petition, Jackson raises (although he

---

[6] To the extent Jackson alleges strictly state law violations, Jackson's ground for relief is not cognizable on federal habeas review. A federal habeas court cannot second guess a state court's decision concerning matters of state law. *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir.2001). *See also Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Thus, a ground for relief based solely on an error of state law is not redressable within the federal habeas process. *Norris v. Schotten*, 146 F.3d 314, 328–29 (6th Cir.1998); *Hutchison v. Marshall*, 744 F.2d 44, 46–47 (6th Cir.1984).

fails to develop) an ineffective assistance of counsel claim:

> The fundamental principles of our justice system that insures all American Citizens that is accused of a crime, their constitutional rights to due process will be protected. When a breakdown of truthful communication occurs between the defendant and his trial counsel, these circumstances create a strong possibility that a miscarriage of justice occurred thereby depriving a defendant his due process and constitutional rights.
>
> A criminal defendant has a fundamental right to due process of law at all critical stages of his criminal proceedings. United States Constitution, Sixth Amendment and the Ohio Constitution, Article I, Section 10 and 16. It is well established that an accused has certain basic constitutional rights which includes the right of a compulsory process and the right to effective assistance of counsel during all critical stages of the proceedings. One of trial counsel's most important functions is to provide the accused accurate and pertinent information as trial counsel works to resolve the accused case before the court, in this present case that did not happen therefore, the Petitioner is entitled to the Habeas Corpus Relief that he seeks herein.

(Doc. No. 1-1 at 19-20.)

Likewise, in his Traverse, Jackson states:

> Every participant within a legal proceeding has a part to play. Defense counsel's duty is to be an adversary to the prosecution's case, this is a major function of a defendant's due process right to obtain a fair & just trial. Failure to do so would thwart defense counsel in his duty to function as an adversary to the prosecution's case.
>
> A Defense counsel's failure to investigate a defendant's case, failure to interview potential witnesses prior to trial, as well as failure to prepare for trial and get evidence on behalf of the defendant for trial would violate the fundamental principles of justice that insures all American Citizens their constitutional right to due process which is a foundation as faith in our justice system.

(Doc. No. 10 at 4.)

Although ineffective assistance of counsel can serve as cause to overcome procedural default, *see, e.g., Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013), the underlying claim of ineffective assistance of counsel must in and of itself not be in default. *See Edwards v. Carpenter*,

529 U.S. 446, 453 (2000) (finding unless the state prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim).

While Jackson raised an ineffective assistance of counsel argument in a post-conviction filing, the trial court denied the filing as untimely (Doc. No. 8-1, Exh. 24, 25), which the state appellate court affirmed. *State v. Jackson*, 2019 WL 1430586, at \*\*1-2. Furthermore, in Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Engle*, 456 U.S. at 125 n. 28. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.* Since Jackson could have raised his ineffective assistance of counsel claim on direct appeal but did not,[7] Jackson's claim is procedurally defaulted for this reason as well.

As Jackson is unable to establish cause to excuse his procedural default, the Court declines to address the issue of prejudice. *See Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir.2000) ("When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice."); *Group v. Robinson*, 158 F. Supp. 3d 632, 651 (N.D. Ohio Jan. 20, 2016).

Accordingly, and for all the reasons set forth above, the Court finds Jackson has failed to establish cause and prejudice to excuse the procedural default of Ground One.

### 2. Actual Innocence

Finally, Jackson has not provided any argument regarding the actual innocence exception, although both his memorandum in support of his Petition and his Traverse repeatedly use the phrases

---

[7] The Court notes that trial counsel also represented Jackson in his appeal to the state appellate court. (Doc. No. 8-1, Exh. 2, 17.)

"manifest injustice" and "miscarriage of justice." (Doc. No. 1-1; Doc. No. 10.)

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (citing *Carrier*, 477 U.S. at 495–96); *see also Schlup*, 513 U.S. at 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623–24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). To be credible, such a claim requires the petitioner to support his allegations of constitutional error with new and reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324; *see also Gulertekin v. Tinnelman–Cooper*, 340 F.3d 415, 427 (6th Cir. 2003).

The crux of Jackson's arguments in his memorandum in support of his Petition and his Traverse is legal insufficiency of the evidence. But even if true, legal insufficiency is not "actual innocence." Jackson provides no new, reliable evidence to establish his innocence. (*See* Doc. Nos. 1-1, 10.) Rather, he reiterates his arguments regarding the interpretation and application of Ohio Rev. Code §§ 2925.03(C)(4)(g) and 2925.11(C)(4)(f). Absent new evidence of innocence, "even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup*, 513 U.S. at 316.

Accordingly, and in light of the above, it is recommended the Court find Jackson's claims are procedurally defaulted and the Petition be DISMISSED.

## V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DISMISSED.

Date: September 24, 2019         *s/ Jonathan Greenberg*
                                  Jonathan D. Greenberg
                                  United States Magistrate Judge

### **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).